Marc Zemel
Katelyn Kinn
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WASTE ACTION PROJECT,          )
                               )
            Plaintiff,         )
                               )
v.                             )
                               )    COMPLAINT
XPO Logistics Freight, Inc.,   )
                               )
            Defendant.         )
_____  )

## I.    INTRODUCTION

1.    This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Waste Action Project, seeks declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendant XPO Logistics Freight, Inc.'s (XPO) repeated and ongoing violations of the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit authorizing certain stormwater discharges of pollutants from XPO's facility in Fife, Washington to navigable waters.

COMPLAINT - 1

## II.    JURISDICTION AND VENUE

2.    The Court has subject matter jurisdiction over Waste Action Project's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Waste Action Project requests.

3.    Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Waste Action Project notified XPO of its violations of the CWA and of Waste Action Project's intent to sue under the CWA by letter dated and postmarked April 3, 2026 ("Notice Letter"). A copy of the Notice Letter is attached to this Complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Waste Action Project notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue XPO by mailing copies of the Notice Letter to these individuals on April 3, 2026.

4.    At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.    The violations complained of in the Notice Letter are continuing and/or are reasonably likely to re-occur.

COMPLAINT - 2

6.    At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

7.    The source of the violations complained of is in Pierce County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

## III.    PARTIES

8.    Waste Action Project is suing on behalf of itself and its members.

9.    Waste Action Project is a non-profit corporation organized under the laws of the state of Washington. Waste Action Project is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Waste Action Project is a membership organization and has at least one member who is injured by XPO's violations.

10.    Waste Action Project has representational standing to bring this action. Waste Action Project's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from XPO's facility, on water quality and aquatic species and wildlife that Waste Action Project's members observe, study, use, and enjoy. Waste Action Project's members are further concerned about the effects of discharges from XPO's facility on human health. In addition, discharges from XPO's facility lessen Waste Action Project's members' aesthetic enjoyment of nearby areas. Waste Action Project has members who live, work, fish, and recreate around or use Hylebos Creek, the Hylebos Waterway, and Commencement Bay which are affected by XPO's discharges. Waste Action Project's members' concerns about the

COMPLAINT - 3

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

effects of XPO's discharges are aggravated by XPO's failure to record and timely report information about its discharges and pollution controls in a timely manner. The recreational, scientific, economic, aesthetic, and/or health interests of Waste Action Project and its members have been, are being, and will be adversely affected by XPO's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

11.    For example, one member of Waste Action Project is a Tacoma resident whose home overlooks Commencement Bay. This member enjoys the views of the water from their home and from regular shoreline drives. But this member's enjoyment of the views is reduced by their knowledge of and reasonable concerns about pollution flowing into the waterway. Knowing about the pollutants flowing to Commencement Bay from industrial facilities including XPO is so worrisome that this member describes it as painful. This member is a descendant of the Ojibwe people and that ancestry provides an innate feeling of obligation for protecting the waterway. This member regularly visits the shoreline of Commencement Bay at Dash Point, Point Defiance, and Brown's Point to enjoy the views and watch for wildlife. This member also takes their grandchild to play along the shoreline at the Brown's Point lighthouse. During these visits, they enjoy watching the grandchild play but their enjoyment is reduced by their concerns about the child's potential exposure to pollutants in the water. As a result of these concerns, this member does not take the grandchild to the shoreline as often as the member would like to.

12.    Defendant XPO is a corporation authorized to conduct business under the laws of the state of Washington.

13.    XPO operates a facility, located at or about 7211 28th Street E, Fife, WA 98424 (referred to herein as the "facility").

COMPLAINT - 4

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

## IV.    LEGAL BACKGROUND

14.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by a NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, is prohibited.

15.    The state of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

16.    Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued iterations of the Industrial Stormwater General Permits, most recently on December 2, 2024, effective January 1, 2025, and set to expire December 31, 2029 (the "2025 ISGP"). The previous permit was issued on November 20, 2019, effective January 1, 2020, and set to expire December 31, 2024 (the "2020 ISGP"). The 2020 ISGP and 2025 ISGP (collectively, "the Permit"), contain substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions.

17.    The Permit imposes certain terms and conditions on those covered thereby, including requirements for monitoring and sampling of discharges, reporting and recordkeeping requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the Permit requires, among other things, that permittees

COMPLAINT - 5

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges. The specific terms and conditions of the Permit are described in detail in the Notice Letter, attached hereto as Exhibit 1 and incorporated herein by this reference.

## V.    FACTS

18.    Ecology granted XPO coverage for the facility under the 2020 ISGP under Permit number WAR008714. XPO was granted coverage under the 2025 ISGP under the same Permit number WAR008714.

19.    XPO discharges stormwater and pollutants associated with industrial activity to Hylebos Creek, a tributary to the Hylebos River, which flows into Commencement Bay.

20.    XPO's facility is engaged in industrial activities and is approximately 5.6 acres, which is entirely impervious. XPO's facility has at least one distinct points of discharge where stormwater and other pollutants leave the facility and eventually enter Hylebos Creek.

21.    XPO has violated and continues to violate "effluent standards or limitations," as defined by 33 U.S.C. §1365(f), including conditions of the NPDES permit. See 33 U.S.C. §§ 1311(a) and 1342. XPO's violations of the Permit and the CWA are set forth in section I, section II par. 1-6, section II par. 8-12, section II par. 14, and sections III through VII of the Notice Letter attached hereto as Exhibit 1 and are incorporated herein by this reference. In particular, and among the other violations described in the Notice letter, XPO has violated the Permit by violating water quality standards, violating AKART standards, failing to prepare and implement an adequate SWPPP, failing to implement BMPs to control water quality, failing to collect

COMPLAINT - 6

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

quarterly samples, failing to timely submit discharge monitoring reports, violating visual monitoring requirements, failing to implement corrective actions, violating annual report requirements, failing to record information, failing to retain records, and failing to report Permit violations.

22.    XPO discharges stormwater from the facility containing levels of pollutants that exceed the benchmark values and effluent limits established by the Permit, including the days on which XPO collected samples with the results identified in Table 1, and is likely to continue discharging comparably unacceptable levels of pollutants in its stormwater:

**Table 1 – Monitoring Point 002\* Benchmark Exceedances**

| Quarter in which sample collected | Turbidity (Benchmark 25 NTU) | Copper Concentration (Benchmark 14 µg/L) | Zinc Concentration (Benchmark 117 µg/L) |
|---|---|---|---|
| 1st Quarter 2020 | 29.5 NTU | | |
| 2nd Quarter 2020 | | 18.59 µg/L | 243 µg/L |
| 4th Quarter 2020 | 33.4 | | 156 |
| 1st Quarter 2021 | | | 221 |
| 2nd Quarter 2021 | 33.2 | 19 | 276 |
| 3rd Quarter 2021 | | 29.4 | 365 |
| 4th Quarter 2021 | | | 134 |
| 1st Quarter 2022 | | | 176 |
| 3rd Quarter 2022 | | 38.5 | 578 |
| 1st Quarter 2023 | | | 158 |
| 2nd Quarter 2023 | | 19.7 | 389 |
| 3rd Quarter 2023 | | | 167 |
| 4th Quarter 2023 | | | 125 |
| 1st Quarter 2024 | 78.6 | 15.2 | 207 |
| 3rd Quarter 2024 | | | 149 |
| 1st Quarter 2025 | 30.1 | | |
| 2nd Quarter 2025 | | 16.6 | 269 |
| 1st Quarter 2026 | 28.8 | | |

\*Monitoring Point 002 is a monitoring point designation used and known by XPO.

23.    XPO attests that the stormwater samples identified in Table 1 are representative of and accurately characterize the quality of stormwater discharges generated by XPO's facility

COMPLAINT - 7

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

during the associated calendar quarters. The stormwater monitoring data provided in Table 1 show benchmark exceedances included in the stormwater monitoring results that XPO submitted to Ecology.

24. XPO's stormwater discharges are causing or contributing to violations of water quality standards and therefore violate Condition S10.A of the Permits. Discharges from XPO's facility contribute to the polluted conditions of the waters of the state, including the water quality standards of Hylebos Creek and the Hylebos River. Discharges from XPO's facility contribute to the ecological impacts that result from the pollution of these waters and to Waste Action Project and its members' injuries resulting therefrom. These requirements and XPO's violations thereof are described in detail in section I of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

25. XPO's exceedances of the benchmark values indicate that XPO is failing to apply AKART to its discharges and is failing to implement an adequate SWPPP and BMPs. XPO violated and continues to violate Conditions S10 and S3 of the Permits by not developing, modifying, and/or implementing BMPs in accordance with the requirements of the Permit, and/or by not applying AKART to discharges from the facility. These requirements and XPO's violations thereof are described in detail in section I and section II of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference, except for section II par. 7 and 13.

26. XPO has violated and continues to violate the monitoring requirements of the Conditions S4.B, S9.B, S3.B.5, and S7 of the Permits. XPO has violated monitoring requirements by failing to collect stormwater samples during certain quarters at each distinct point of discharge offsite except for substantially identical outfalls excluded by a sufficiently

COMPLAINT - 8

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

detailed analysis in the Facility's SWPPP, and failing to submit timely discharge monitoring reports. XPO has also violated visual monitoring requirements by failing to conduct Industrial Stormwater Monthly Inspections, failing to maintain the requisite inspection reports and checklists, and failing to make the requisite certifications and summaries by qualified personnel each and every month for the last five years. XPO's violations of the Permit's monitoring requirement are described in sections III of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference. These violations are reasonably likely to recur.

27.    XPO triggered Level One Corrective Action requirements under the Permit for each benchmark exceedance identified in Table 1 above. XPO has violated the requirements of Condition S8.B of the Permits by failing to conduct Level One Corrective Action requirements in accordance with the Permit's conditions, including the required inspection to investigate the cause; review, revision, and certification of the SWPPP; the required implementation of additional BMPs; and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, including the benchmark exceedances listed in Table 1 above. These Corrective Action requirements and XPO's violations thereof are described in section IV.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

28.    XPO triggered Level Two Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any two quarters of a calendar year for the same pollutant parameter. XPO has violated the requirements of Condition S8.C of the Permits by failing to conduct a Level Two Corrective Action in accordance with Permit

COMPLAINT - 9

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional structural source control BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any two quarters during a calendar year for the same pollutant parameter, including the benchmark exceedances listed in Table 1 above. These violations include but are not limited to XPO's failure to perform Level Two Corrective Action requirements for turbidity triggered by its stormwater sampling during calendar year 2020, for zinc triggered by its stormwater sampling during calendar year 2020, 2021, 2022, 2023, and 2024, and for copper triggered by its stormwater sampling during calendar year 2021. These corrective action requirements and XPO's violations thereof are described in section IV.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

29.     XPO triggered Level Three Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any three quarters of a calendar year for the same pollutant parameter. XPO has violated the requirements of Condition S8.C of the Permits by failing to conduct a Level Three Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional/new treatment BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any three quarters during a calendar year for the same pollutant parameter, including the benchmark exceedances listed in Table 1 above. These violations include but are not limited to XPO's failure to perform Level Three Corrective Action

COMPLAINT - 10

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

requirements for zinc triggered by its stormwater sampling during calendar year 2021 and 2023. These corrective action requirements and XPO's violations thereof are described in section IV.C of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

30.    XPO has violated the requirement of Permit Condition S9.C to submit an accurate and complete annual report to Ecology by the required deadline and including the requirement documentation of specific information including descriptions of corrective actions. XPO violated these requirements because it did not timely submit an annual report for 2024 or 2025, and the annual report submitted by XPO for 2020, 2021 and 2022 do not include the required information. These annual report requirements and XPO's violations thereof are described in section V of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

31.    XPO has violated the recordkeeping requirements of Permit Condition S4.B.4 because XPO does not record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if XPO collected the sample within the first 12 hours of stormwater discharge event, an explanation of why XPO could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling, as required by the Permit Condition. These requirements and XPO's violations thereof are described in section VI.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

COMPLAINT - 11

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

32.    XPO has violated the record keeping requirements of Permit Condition S9.D. XPO does not retain for a minimum of five years a copy of the current Permit, a copy of XPO's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit, as required by the Permit Conditions. These requirements and XPO's violations thereof are described in section VI.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

33.    Condition S9.F of the Permits requires XPO to take certain actions, including reporting to Ecology and immediately taking actions, in the event XPO is unable to comply with any terms and conditions of the Permit which may endanger human health or the environment. XPO has violated these requirements of the Permit by failing to report and correct permit violations, including each and every time XPO violated corrective action requirements as described above in paragraphs 27-29, and each and every time XPO discharged stormwater with amounts of pollutants in excess of the Permit benchmarks as described in paragraph 22 above. These violations are in section VII of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

34.    A significant penalty should be imposed against XPO under the penalty factors set forth in 33 U.S.C. § 1319(d).

COMPLAINT - 12

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

35.     XPO's violations were avoidable had XPO been diligent in overseeing facility operations and maintenance.

36.     XPO benefited economically as a consequence of its violations and failure to implement improvements at the facility.

37.     XPO's violations caused and contributed to pollution in the water column and sediments of the receiving water, which may be ameliorated by an order from the Court requiring clean up or monitoring.

## VI.     CAUSE OF ACTION

38.     The preceding paragraphs and the allegations in the Notice Letter attached hereto as Exhibit 1 are incorporated herein.

39.     XPO's violations of its NPDES permit described herein and in the Notice Letter constitute violations of "effluent standard(s) or limitation(s)" as defined by Section 505 of the CWA, 33 U.S.C. § 1365.

40.     No agency has taken an enforcement action constitution diligent prosecution or otherwise precluding claims under 33 U.S.C. §§ 1319 or 1365(a).

41.     Prior notice of violations and claims was provided to XPO and others as required.

42.     These violations committed by XPO are ongoing or are reasonably likely to reoccur. Any and all additional violations of the Permit and the CWA which occur after those described in Waste Action Project's Notice Letter, but before a final decision in this action, should be considered ongoing violations subject to this Complaint.

COMPLAINT - 13

43.     Without the imposition of appropriate civil penalties and the issuance of an injunction, XPO is likely to continue to violate the Permit and the CWA to the further injury of Waste Action Project, its members, and others.

## VII.   RELIEF REQUESTED

Wherefore, Waste Action Project respectfully requests that this Court grant the following relief:

A.     Issue a declaratory judgment that XPO has violated and continues to be in violation of the Permit and the CWA

B.     Enjoin XPO from operating the facility in a manner that results in further violations of the Permit and the CWA;

C.     Order XPO to immediately develop and implement a SWPPP that complies with the Permit at the facility;

D.     Order XPO to allow Waste Action Project to participate in the development and implementation of XPO's SWPPP and compliance plan;

E.     Order XPO to provide Waste Action Project, for a period beginning on the date of the Court's Order and running for three years after XPO achieves compliance with all of the conditions of the Permit, with copies of all reports and other documents which XPO submits to Ecology regarding XPO's coverage under the Permit at the facility at the time these documents are submitted;

F.     Order XPO to take specific actions to remediate the environmental harm caused by its violations;

COMPLAINT - 14

Smith & Lowney PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

G.    Order XPO to pay civil penalties of $68,445 per day of violation for each violation committed by XPO, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

H.    Award Waste Action Project its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

I.    Award such other relief as this Court deems appropriate.


RESPECTFULLY SUBMITTED this 18th day of June, 2026,


SMITH & LOWNEY, PLLC

By:    By: s/Marc Zemel
        Marc Zemel, WSBA #44325
        By: s/Katelyn Kinn
        Katelyn Kinn, WSBA #42686
        Attorneys for Plaintiff
        2317 E. John St.,
        Seattle, WA 98112
        Tel: (206) 860-2124
        Fax: (206) 860-4187
        E-mail: marc@smithandlowney.com,
        katelyn@smithandlowney.com

COMPLAINT - 15

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

# SMITH & LOWNEY

## ───── PLLC ─────

## ATTORNEYS AT LAW

April 3, 2026

**Via Certified Mail - Return Receipt Requested**

Managing Agent
XPO Logistics Freight, Inc.
7211 28th Street E
Fife, WA 98424

Managing Agent
XPO Logistics Freight, Inc.
2055 NW Savier Street
Portland, OR 97209-1770

Managing Agent
XPO Logistics Freight, Inc.
2211 Old Earhart Rd.
Ann Arbor, MI 48105-2963

Re:    **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Waste Action Project, P.O. Box 9281, Covington, WA 98042, (206) 849-5927. Any response or correspondence related to this matter should be directed to us at the letterhead address (Smith & Lowney, PLLC, 2317 E John St., Seattle, WA 98112). This letter is to provide you with sixty days' notice of Waste Action Project's intent to file a citizen suit against Defendant XPO Logistics Freight, Inc. ("XPO") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by XPO's National Pollution Discharge Elimination System ("NPDES") permit.

XPO was granted coverage under Washington's Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") effective January 1, 2020 and expired on December 31, 2024 under NPDES No. WAR008714 (the "2020 Permit"). Ecology granted XPO coverage under the current iteration of the ISGP effective January 1, 2025,



and set to expire on December 31, 2029 (the "2025 Permit") and maintains the same permit number, WAR008714.

XPO has violated and continues to violate effluent standards and limitations under the CWA (see 33 U.S.C. §§ 1365(f)) including the terms and conditions of the 2020 Permit and the 2025 Permit (collectively, the "Permits") with respect to operations of, and discharges of stormwater and pollutants from, its facility located at or about 7211 28th Street E, Fife, WA 98424 (the "facility") as described herein, to Hylebos Creek and the Hylebos Waterway. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by XPO.

## I.      COMPLIANCE WITH STANDARDS.

Condition S10.C of the Permits requires XPO to apply all known and reasonable methods of prevention, control, and treatment ("AKART") to all discharges, including preparation and implementation of an adequate Stormwater Pollution Prevention Plan ("SWPPP") and best management practices ("BMPs"). XPO has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs, as evidenced by the elevated levels of pollutants in its discharge indicated in Table 1 and as described below in this notice of intent to sue.

Table 1 – Monitoring Point 002 Benchmark Exceedances

| Quarter in which sample collected | Turbidity (Benchmark 25 NTU) | Copper Concentration (Benchmark 14 µg/L) | Zinc Concentration (Benchmark 117 µg/L) |
|---|---|---|---|
| 1st Quarter 2020 | 29.5 NTU | | |
| 2nd Quarter 2020 | | 18.59 µg/L | 243 µg/L |
| 4th Quarter 2020 | 33.4 | | 156 |
| 1st Quarter 2021 | | | 221 |
| 2nd Quarter 2021 | 33.2 | 19 | 276 |
| 3rd Quarter 2021 | | 29.4 | 365 |
| 4th Quarter 2021 | | | 134 |
| 1st Quarter 2022 | | | 176 |
| 3rd Quarter 2022 | | 38.5 | 578 |
| 1st Quarter 2023 | | | 158 |
| 2nd Quarter 2023 | | 19.7 | 389 |
| 3rd Quarter 2023 | | | 167 |
| 4th Quarter 2023 | | | 125 |
| 1st Quarter 2024 | 78.6 | 15.2 | 207 |
| 3rd Quarter 2024 | | | 149 |
| 1st Quarter 2025 | 30.1 | | |
| 2nd Quarter 2025 | | 16.6 | 269 |

## II.    STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS

XPO is in violation of the Permits' SWPPP provisions as follows:

1.  Condition S3.A of the Permits requires XPO to develop and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions. XPO has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary.

2.  The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs. Condition S3.B.4 of the Permits require that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S3.A.2 of the Permits requires that the SWPPP include BMPs consistent with the Stormwater Management Manual for Western Washington (SWMMWW), available at https://fortress.wa.gov/ecy/ezshare/wq/SWMMs/2024SWMMWW/2024_SWMMWW.htm or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. XPO's SWPPP does not comply with these requirements because it does not adequately describe BMPs and does not include BMPs consistent with approved stormwater technical manuals nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

3.  XPO's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility assessment because it does not describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, regular business hours and seasonal variations in business hours or in industrial activities, as required.

4.  XPO's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies all significant features, stormwater drainage and discharge structures, contributing stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, areas where industrial activity is conducted, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas and areas where equipment cleaning is conducted, locations where vehicles are parked or stored, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

5. XPO's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial

activities that have been or may potentially be sources of pollutants as required. The SWPPP does not identify all areas associated with loading and unloading of material handled at the facility, outdoor storage of materials or products, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

6. XPO's SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials. The SWPPP does not include an inventory of materials that lists all the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required. The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

7. XPO's SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance and modification.

8. Condition S3.B.4 of the Permits requires that permittees include in their SWPPPs and implement certain mandatory BMPs unless site conditions render the BMP unnecessary or infeasible, and an alternative and demonstrably equivalent BMP is provided. XPO is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

9. XPO's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs in the following categories: good housekeeping (including definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task as well as a maintenance log for completing each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee and contractor/vendor training (including an overview of what is in the SWPPP who is responsible for maintaining the SWPPP, and its location onsite, how employees make a difference in complying with the SWPPP and their role in ensuring proper maintenance of BMPs, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, a log of the dates on which specific employees received training, and a report of all electronically performed trainings, as applicable); inspections and recordkeeping (including documentation of

Notice of Intent to Sue - 4

procedures to ensure compliance with permit requirements for inspections and recordkeeping, identification of personnel who conduct inspections, provision of a visual inspection report or checklist, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how XPO will comply with signature and record retention requirements, certification of compliance with the SWPPP and Permit, and all completed inspection reports).

10.  XPO's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

11.  XPO's SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff.

12. XPO's SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

13.  XPO's SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

14.  XPO's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required. The SWPPP does not include a sampling plan that: identifies points of discharge to surface waters, stormwater drainage systems, or discrete groundwater infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; identifies staff responsible for conducting stormwater sampling; specifies procedures for sampling collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantitation levels, and analytical methods, and that specifies the procedure for submitting the results to Ecology.

## III.   MONITORING AND REPORTING VIOLATIONS

### A.   Failure to Collect Quarterly Samples

Condition S4.B of the Permits requires XPO to collect a sample of its stormwater discharge once during every calendar quarter from each designated sampling location. Conditions S4.B.3.a of the 2020 Permit and S4.B.3 of the 2025 Permit require XPO to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls as justified in the facility SWPPP, in which case only one of the substantially identical outfalls must be sampled.  These conditions set forth sample collection criteria but require the collection of a sample even if the criteria cannot be met. The facility has at least two distinct points of discharge off-site: Monitoring Point 002, as well as surface runoff not captured by

Notice of Intent to Sue - 5

catch basins at the facility, including down the facility driveway or other points at the edge of the facility boundary.

XPO violated these requirements by failing to collect stormwater samples at any of its discharge points during the third quarter of 2020 and the third quarter of 2025, and failing to collect stormwater samples of its surface runoff in any quarter.

XPO has also violated and continues to violate these conditions because it does not sample each distinct point of discharge off-site. These violations have occurred and continue to occur each and every quarter during the last five years that XPO was and is required to sample its stormwater discharges, including the quarters in which it collected stormwater discharge samples from some, but not each, point of discharge. These violations will continue until XPO commences monitoring all distinct points of discharge.

### B.    Failure to Timely Submit Discharge Monitoring Reports.

Condition S9.B of the Permits require XPO to use DMR forms provided or approved by Ecology to summarize, report and submit monitoring data to Ecology. For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not later than 45 days after the end of the monitoring period. XPO has violated these conditions by failing to submit a DMR within the time prescribed for the third quarter of 2020, fourth quarter of 2020, second quarter of 2021, third quarter of 2021, first quarter of 2022, fourth quarter of 2022, and third quarter of 2025.

### C.    Failure to Comply with Visual Monitoring Requirements

Conditions S7.A and B of the Permits require that monthly visual inspections be conducted at the facility by qualified personnel. Each inspection is to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged, observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges, observations for the presence of illicit discharges or illicit connections, a verification that the descriptions of potential pollutant sources required by the permit are accurate, a verification that the site map in the SWPPP reflects current conditions, and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed). Once annually, dumpsters must be inspected for holes or defects.

Condition S7.C of the Permits requires that XPO record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required. The report/checklist must include the time and date of the inspection, the locations inspected, a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits, a summary report and schedule of implementation of the remedial actions that XPO plans to take if the site inspection indicates that the facility is out of compliance, the name, title, signature and certification of the person conducting the

Notice of Intent to Sue - 6

facility inspection, and a certification and signature of the responsible corporate officer or a duly authorized representative.

XPO is in violation of these requirements of Condition S7 of the Permits because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists, and failed to make the requisite certifications and summaries.

## IV.    CORRECTIVE ACTION VIOLATIONS

### A.    Violations of the Level One Requirements

Condition S8.B of the Permits requires XPO take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range for pH.

As described by Condition S8.B of the Permits, a Level One Corrective Action requires XPO to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (2) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits.  Condition S8.B.3 of the 2020 Permit and S8.B.2 of the 2025 Permit requires XPO to implement the revised SWPPP as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

Condition S5.A and Table 2 of the Permits establishes the following benchmarks: turbidity 25 NTU; pH 5 – 9 SU; total copper 14 µg/L; and total zinc 117 µg/L. Condition S5.B and Table 3 of the Permits establish the following additional benchmarks for NAICS code 484122 that are applicable to XPO: Petroleum Hydrocarbons (Diesel-range organics and heavy oil) 10 mg/L (NWTPH-Dx).

XPO has violated the requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH, including the benchmark excursions listed in Table 1 above.

### B.    Violations of the Level Two Requirements

Condition S8.C of the Permits requires XPO take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any two quarters during a calendar year.

Notice of Intent to Sue - 7

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires XPO to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs in all areas/discharge points that exceeded the benchmark parameter with the goal of achieving the applicable benchmark value(s) in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permits; and (3) summarize the Level Two Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permits.  Condition S8.C.4 of the Permits requires XPO implement the revised SWPPP according to Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later August 31st of the following year.

The Permits establish the benchmarks applicable to XPO described in section IV.A of this notice of intent to sue letter.

XPO has violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, including additional structural source control BMPs, and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any two quarters during a calendar year. As indicated in Table 1 above, these violations include, but are not limited to, XPO's failure to fulfill these obligations for turbidity triggered by its stormwater sampling during calendar year 2020, for zinc triggered by its stormwater sampling during calendar year 2020, 2021, 2022, 2023, and 2024, and for copper triggered by its stormwater sampling during calendar year 2021.

### C.     Violations of the Level Three Requirements

Condition S8.D of the Permits requires XPO take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any three quarters during a calendar year.

As described by Condition S8.D of the Permits, a Level Three Corrective Action requires XPO: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional treatment BMPs in all areas/discharge points that exceeded the benchmark parameter with the goal of achieving the applicable benchmark value(s) in future discharges and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of treatment BMPs, and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permits; and (3) summarize the Level Three Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permits, including information on how monitoring, assessment, or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced, or it new/additional treatment BMPs will be installed. Condition S8.D.2 of the Permits requires that a licensed professional engineer,

Notice of Intent to Sue - 8

geologist, hydrogeologist, of certified professional in stormwater quality must review, sign, and certify the portion of the SWPPP that addresses stormwater treatment structures or processes. *See* Permit Appendix 2 (defining "qualified industrial stormwater professional").

Condition S8.D.3 of the Permits requires that, before installing BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, the XPO submit an engineering report, plans, and specifications, and an operations and maintenance manual to Ecology for review in accordance with chapter 173-204 of the Washington Administrative Code. The engineering report must be submitted no later than six months after the last day of the calendar year in which the Level 3 was triggered (2025 Permit) or by the May 15th prior to the Level 3 deadline (2020 Permit). The plans and specifications and the operations and maintenance manual must be submitted to Ecology no later than 30 days after construction/installation is complete.

Condition S8.D.5 of the Permits requires XPO fully implement the revised SWPPP according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than September 30th of the following year.

The Permits establish the benchmarks applicable to XPO described in section IV.A of this notice of intent to sue letter.

XPO has violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with permit conditions, including: the required review, revision and certification of the SWPPP; the requirement to have a specified professional sign and certify the portion of the SWPPP pertaining to treatment; the required implementation of additional BMPs, including additional treatment BMPs; the required submission of an engineering report, plans, specifications, and an operations and maintenance plan; and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any three quarters during a calendar year. As indicated in Table 1 above, these violations include, but are not limited to, XPO's failure to fulfill these obligations for zinc triggered by its stormwater sampling during calendar year 2021, and 2023.

## V.    VIOLATIONS OF THE ANNUAL REPORT REQUIREMENTS

Condition S9.C of the Permits require XPO to submit an accurate and complete annual report to Ecology no later than May 15 of each year.  The annual report must include corrective action documentation as required in Condition S8.B – D of the Permits. If a corrective action is not yet completed at the time of submission of the annual report, XPO must describe the status of any outstanding corrective action.  Specific information to be included in the annual report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level 1, 2, or 3 corrective actions completed during the previous calendar year, including the dates corrective actions were completed, and description of the status of any Level 2 or 3 corrective actions triggered during the previous calendar year, including identification of the date XPO expects to complete corrective actions.

Notice of Intent to Sue - 9

XPO has violated this condition. XPO did not timely submit an annual report for 2024 or 2025, and the annual report submitted by XPO for 2020, 2021 and 2022 do not include the required information. Specifically, those reports do not describe all of the stormwater problems identified, such as those causing the benchmark exceedances noted on XPO's DMRs, and the reports do not describe required corrective actions XPO implemented or the status of its outstanding corrective actions, including additional operational, structural source control, and treatment BMPs.

## VI.    VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS

### A.    Failure to Record Information

Condition S4.B.4 of the Permits requires XPO record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if XPO collected the sample within the first 12 hours of stormwater discharge event, an explanation of why XPO could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling. XPO is in violation of these conditions as it has not recorded each of these specified items for each sample taken during the last five years.

### B.    Failure to Retain Records

Condition S9.D of the 2020 Permits require XPO to retain for a minimum of five years a copy of the current Permit, a copy of XPO's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit. XPO is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation during the last five years.

## VII.    FAILURE TO REPORT PERMIT VIOLATIONS

Condition S9.F of the Permits requires XPO to take certain actions in the event XPO is unable to comply with any of the terms and conditions of the Permits which may endanger human health or the environment, or exceed any numeric effluent limitation in the permit. In such circumstances, XPO must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and XPO must immediately notify the appropriate Ecology regional office of the failure to comply. XPO must then submit a detailed written report to Ecology, including specified details, within 5 days of the time XPO became aware of the circumstances, unless Ecology requests an earlier submission.

XPO routinely violates these requirements, including each and every time XPO failed to comply with the corrective action requirements described in section IV of this notice of intent to sue; and each and every time XPO discharged stormwater with concentrations of pollutants in

excess of the Permit benchmarks, as described in Table 1, above. All these violations may endanger human health or the environment.

## VIII.    REQUEST FOR SWPPP

<u>Pursuant to Condition S9.G of the Permits, Waste Action Project hereby requests that XPO Logistics Freight, Inc. provide a copy of, or access to, its SWPPP</u> complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should XPO fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.G of the Permits, it will be in violation of that condition, which violation shall also be subject to this notice of intent to sue and any ensuing lawsuit.

## IX.    CONCLUSION

The above-described violations reflect those indicated by the information currently available to Waste Action Project.  These violations are ongoing. Waste Action Project intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $68,445 per violation per day. *See* 40 C.F.R. § 19.4.  In addition to civil penalties, Waste Action Project will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Further, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Waste Action Project believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against XPO Logistics Freight, Inc. under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

Smith & Lowney, PLLC

Notice of Intent to Sue - 11

By:  /s/Katelyn Kinn
     Katelyn Kinn
     Marc Zemel


cc:   Lee Zeldin, Administrator, U.S. EPA
      Emma Pokon, Region 10 Administrator, U.S. EPA
      Casey Sixkiller, Director, Washington Department of Ecology
      Registered Agent Solutions, Inc., Registered Agent (P.O. Box 1368, Olympia, WA
      98507)

Notice of Intent to Sue - 12